IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN WATERMAN,

    **Plaintiff,**

v.                                            CASE NO. 25-3038-JWL

MICHELLE TUNNEL, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Brian Michael Waterman is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I. Nature of the Matter before the Court

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). This matter is before the Court on Plaintiff's response (Doc. 5), Motion for Preliminary Injunction (Doc. 6), and Motion to Supplement Pleadings (Doc. 7).

Plaintiff alleges in his Complaint that he is allergic to peas, green beans, and seafood, and that on February 27, 2025, he was served a food tray with a pea in it. (Doc. 1, at 4.) Plaintiff alleges that he immediately spit the pea out and rinsed his mouth, and started "breaking out in a rash." *Id*. Plaintiff alleges that he was taken to medical, where the nurse examined Plaintiff's rash and then called APRN Michelle Tunnel on her cell phone. *Id*. at 5. Plaintiff alleges that APRN Tunnel told the nurse to give Plaintiff "a big dose of solumedrol in a shot," two Benadryl, and another dose of solumedrol. *Id*.

Plaintiff alleges that at 10 pm, his heart rate started to rise due to the "overdose" of steroids given. *Id*. Plaintiff alleges that on February 28, at 12:00 at night, he was having chest pains and medical was called. *Id*. Plaintiff alleges that his pulse was 112 and his blood pressure was 150/97. *Id*. Plaintiff alleges that at 3:00 am, he went back and his pulse was at 121 and his blood pressure was 154/97. *Id*. Plaintiff claims he was given an EKG, and "it read cardiac attack." *Id*. Plaintiff alleges that at 7:00 am he was seen by Faye Vargas and his pulse was at 110. *Id*. Plaintiff alleges that Vargas stated that Plaintiff was given an extreme amount of steroids for just a rash. *Id*. Plaintiff alleges that he requested another EKG at 9:00 am, and APRN Tunnel told Nurse Amy not to give him one. *Id*. at 6. Plaintiff alleges that nothing was given to him to counteract the overdose and he was denied a medical cell for observation. *Id*.

Plaintiff alleges that Warden Schnurr does not have a doctor for Hutchinson Central, East, or South, and only APRN Tunnel is available to see inmates. *Id*. Plaintiff alleges that there hasn't been a doctor there for six to eight months. *Id*.

Plaintiff also alleges that Aramark Supervisor Armstrong is still sending Plaintiff trays with the wrong diet written on them. *Id*. Plaintiff alleges that his trays are still being contaminated. *Id*. Plaintiff alleges that for almost every meal he has a tray that is sent back to be fixed, and on March 2, 2025, his dinner meal had green beans on the tray. *Id*. OIC Summer picked the tray up and took it back to the kitchen. *Id*.

Plaintiff alleges a sole count in his Complaint. As Count I, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment, arguing that "prisons must provide inmates with nutritional [sic] adequate food that is prepared and served under conditions which do not present an imminent danger to the health and well-being of the inmate who consumes it." *Id*. at 4–5. Plaintiff alleges that APRN Michelle Tunnel's actions were "retaliatory and

malicious to cause [Plaintiff] serious harm or death." *Id*. at 5.  Plaintiff alleges that she knew she was overdosing Plaintiff on steroids, and she refused to counteract the medication for over 22 hours "leaving [Plaintiff] in cardiac attack with no observation." *Id*.

Plaintiff names as defendants:  Michelle Tunnel, Nurse; Centurion; (fnu) Armstrong, Kitchen Supervisor; (fnu) Davis, Aramark Worker; and Dan Schnurr, Warden.  For relief, Plaintiff seeks compensatory and punitive damage, and injunctive relief in the form of an "immediate transfer," an outside medical visit for his heart, a "real doctor furnished for inmates at HCF at all times," and for "Jeff Zmuda to investigate HCF Centurion Medical." *Id*. at 8.  Plaintiff also seeks to have EAI investigate why he was not taken to an observation cell or given medication to counteract the overdose of steroids, to have "all medical go through HCF's doctor not the APRNs," and to have a special master appointed to investigate Aramark's special diet training and food preparation and to investigate Centurion's procedures for allergic reactions and overdoses of steroids. *Id*. at 9.  Lastly, Plaintiff seeks all new training programs for all medical and Aramark staff. *Id*.

## II.  Motion for Leave to Proceed In Forma Pauperis

On March 6, 2025, the Court entered a Memorandum and Order (Doc. 4) ("M&O") denying Plaintiff leave to proceed in forma pauperis, finding Plaintiff is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g).  The Court examined the Complaint and found no showing of imminent danger of serious physical injury.  The Court granted Plaintiff until April 4, 2025, to submit the $405.00 filing fee.  The M&O provides that "[t]he failure to respond by the deadline will result in the dismissal of this matter without prejudice and without additional prior notice."  (Doc. 4, at 3.)

Plaintiff has filed a response (Doc. 5), indicating that Aramark has ignored his severe allergy diet "almost every day." (Doc. 5, at 2.) Plaintiff acknowledges that the nurse went to the kitchen and spoke with Aramark employees after Plaintiff's allergic reaction on February 27, 2025. *Id*. Plaintiff alleges that Aramark "still has been placing green beans an [sic] peas on [Plaintiff's] tray." *Id*. Plaintiff argues that "another allergic reaction is imminent" and "Centurion medical professionals are not adequately qualified to treat [his] allergic reactions." *Id*. at 2–3.

Based on Plaintiff's response, the Court will allow him to proceed in forma pauperis. The Court grants Plaintiff's motion for leave to proceed in forma pauperis at Doc. 2. The Court assesses an initial partial filing fee of $1.50, calculated under 28 U.S.C. § 1915(b)(1). Plaintiff is granted to and including May 30, 2025, to submit the fee. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fee as directed may result in the dismissal of this matter without further notice. Plaintiff remains obligated to pay the remainder of the $350.00 filing fee. The agency having custody of Plaintiff shall forward payments from Plaintiff's account in installments calculated under 28 U.S.C. § 1915(b)(2). The Court directs the Clerk to transmit a copy of this order to Plaintiff, to the finance office at the institution where Plaintiff is currently confined, and to the Court's finance office.

### III. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28

U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round

out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## IV. DISCUSSION

### 1. Exhaustion

Plaintiff claims that he was served food that he is allergic to on February 27, 2025, and that his allergic response was not properly addressed by medical staff. Plaintiff filed an emergency grievance on March 3, 2025, that allowed staff 10 days to respond. (Doc. 1–1.) Plaintiff filed his Complaint in this case on March 5, 2025. Although Plaintiff's Complaint does not include the date it was signed, Plaintiff's motion for leave to proceed in forma pauperis that was submitted with his Complaint is dated March 2, 2025—the day before he filed his initial grievance. *See* Doc. 2, at 1, 2; *see also* Doc. 3, at 2 (Motion to Object to any Martinez Report

was submitted with the Complaint and was signed on March 3, 2025). Therefore, it appears that Plaintiff did not fully exhaust his administrative remedies prior to filing this case.

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607

7

F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

HCF's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Plaintiff has failed to follow those steps prior to filing his Complaint.

The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim). Under the PLRA "a prisoner must exhaust his administrative remedies

prior to filing a lawsuit regarding prison conditions in federal court." *Little*, 607 F.3d at 1249 (citations omitted).

### 2. Eighth Amendment

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Plaintiff's claims suggest, at most, negligence, and are subject to dismissal. Claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330

(1986) (holding that inmate who slipped on a pillow negligently left on a stairway by sheriff's deputy failed to allege a constitutional violation); *see also Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1162 (10th Cir. 2007) (citing *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995) ("Liability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence.") (quotations omitted); *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) ("The Supreme Court has made it clear that liability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant. It cannot be predicated upon negligence.") (quotations and citations omitted). Plaintiff's Complaint is subject to dismissal for failure to state a claim. Plaintiff is given an opportunity to file an amended complaint.

## V. Motion for Preliminary Injunction

Plaintiff's Motion for Preliminary Injunction alleges that he began to experience chest pains, rapid heart rate, and lightheadedness on March 31, 2025. (Doc. 6, at 1.) Plaintiff alleges that he informed guard Marller, but Marller did not contact medical because it was during count time. *Id*. at 1, 3. Plaintiff alleges that he waited for 30 minutes and then Ms. Robert from mental health walked past Plaintiff's door and he asked her if she would contact medical, and she did. *Id*. at 1–2. She checked on Plaintiff ten minutes later, and said she would call a code if medical didn't come down. *Id*. at 2. Plaintiff alleges that RN Amber arrived and assessed his vitals. *Id*. He claims his pulse was 131, and his blood pressure was 150/97. *Id*. Plaintiff alleges that the finger reader was left on Plaintiff and his pulse went from 131 to 141, and then to 151. *Id*. Plaintiff alleges that Amber called down to triage to okay Plaintiff for an EKG, and was told not to bring Plaintiff down. *Id*. Amber gave Plaintiff Sqwinchers to drink, an IBU, and returned him to his cell. *Id*. Plaintiff alleges that Nurse Amber came by a little later and took his vitals and

indicated they were a little better.  *Id*.  Plaintiff alleges that he should have received an EKG, and chest pains protocols are not being followed.  *Id*. at 2–3.  For relief, Plaintiff asks the Court to transfer him.  *Id*. at 4.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact

on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The movant must also establish a relationship between the injury claimed in their motion and the conduct alleged in the complaint. *Little*, 607 F.3d at 1251 (citation omitted); *see also Hicks v. Jones*, 332 F. App'x 505, 507–08 (10th Cir. 2009) (affirming denial of injunctive relief where movant sought relief on "a matter lying wholly outside the issues in [his] suit"). It is not clear that Plaintiff's symptoms alleged in the motion—occurring a month after his alleged overdose of steroids—are related to the claims he asserts in his Complaint.

Plaintiff seeks a transfer which would require the non-moving party to take action and would have an adverse impact on public safety and prison operations. The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. The motion is denied.

## VI. Motion to Supplement Pleadings

Plaintiff also filed a Motion to Supplement Pleadings pursuant to Fed. R. Civ. P. 15(d), seeking to set forth new facts occurring after he filed his case. (Doc. 7, at 1.) Plaintiff alleges that on April 16, 2025, Aramark worker V.C. inspected Plaintiff's Styrofoam tray for allergies, signed the top of Plaintiff's tray, and sent the tray to Plaintiff in segregation. *Id*. at 2. Plaintiff

alleges that the tray contained pasta mixed with broccoli, carrots, and peas. *Id*. Plaintiff alleges that before he noticed, he ate a pea, spit it out, and washed his mouth out. *Id*. Plaintiff states that he went to medical and Nurse Faye gave Plaintiff two Benadryl pills for his rash and itching. Plaintiff alleges that he refused the shot of solumedrol because HCF medical does not understand how to administer it correctly. *Id*. Plaintiff alleges that Aramark worker V.C. sent Plaintiff a burnt cookie, rice, turkey, and lettuce for dinner, while other inmates received rice, beans, tortillas, salsa, lettuce, and cookies. *Id*. Plaintiff also indicates that he has forwarded his grievance to the Secretary of Corrections. *Id*.

The Court is granting Plaintiff an opportunity to file an amended complaint. Therefore, the Court denies the motion to supplement. Plaintiff can assert any claims in his amended complaint that comply with Fed. R. Civ. P. 18 and 20 regarding joinder of claims and defendants. Plaintiff must also exhaust administrative remedies prior to bringing an action in this Court. *See Williams v. Whittington*, 2024 WL 4476229, at *6 (M.D. Ga. 2024) (the court exercised its discretion in denying leave to supplement where plaintiff had not had enough time to fully exhaust his administrative remedies with respect to the claims he raises in his supplement, and because the claims would be dismissed without prejudice, plaintiff would have the opportunity to raise the claims in a separate action).

## VII. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is

not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3038-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is **granted.** The Court assesses an initial partial filing fee of $1.50, calculated under 28 U.S.C. § 1915(b)(1). Plaintiff is granted to and including **May 30, 2025,** to submit the fee. The failure to pay the fee as directed may result in the dismissal of this matter without further notice. Plaintiff remains obligated to pay the remainder of the $350.00 filing fee. The agency having custody of Plaintiff shall forward payments from Plaintiff's

account in installments calculated under 28 U.S.C. § 1915(b)(2).  The Court directs the Clerk to transmit a copy of this order to Plaintiff, to the finance office at the institution where Plaintiff is currently confined, and to the Court's finance office.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 6) and Motion to Supplement Pleadings (Doc. 7) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **May 30, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 30, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated April 30, 2025, in Kansas City, Kansas.**

>                    **S/ John W. Lungstrum**
>                    **JOHN W. LUNGSTRUM**
>                    **UNITED STATES DISTRICT JUDGE**